**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **1:05-CR-094-01-WSD** |
| **HOA QUOC TA,** | |
| **Defendant.** | |

### ORDER

This matter is before the Court on Defendant's Motion to Bar Further Prosecution of Defendant as Retrial Would Subject Defendant to Double Jeopardy [147] ("Motion to Bar Retrial"), the Government's Response in Opposition to Defendant's Motion to Bar Retrial on Double Jeopardy Grounds  [152] ("Government's Response"), and Defendant's Motion to Supplement the Record [150].

I.  **FACTUAL BACKGROUND**

Defendant Hoa Quoc Ta is charged with one count of kidnapping in violation of 18 U.S.C. § 1201, one count of carjacking in violation of 18 U.S.C. § 2119(1), and two counts of possessing a firearm in furtherance of crimes of violence in

violation of 18 U.S.C. § 924(c).  A trial on these charges began on January 30,

2006.  Following voir dire and jury selection, Judge Clarence Cooper (the "trial

judge")  empaneled the jury and administered the oath to them.  The Government

made its opening statement.  Mr. Nelson Tyrone, counsel for Mr. Ta, began his

opening statement immediately after the Government completed its opening

remarks.  (Transcript of Jury Trial Proceedings held on 1/31/06 before Judge

Clarence Cooper [143] ("Transcript"), at 10).  Well into defense counsel's

remarks, counsel for the Government objected to Mr. Tyrone's opening.  When the

objection was made, defense counsel had not yet gotten into the facts of the

kidnapping and carjacking or the related firearms violations with which defendant is

charged.  In response to the objection, the trial judge instructed Mr. Tyrone to

"move on to more germane facts you expect the evidence to show."  (Tr. at 20.)

Several minutes later, the trial judge requested his deputy courtroom clerk to

place a note on the podium at which Mr. Tyrone was speaking advising him that he

needed to begin wrapping up his opening.  A short time later, the trial judge told

Mr. Tyrone to "bring [his opening] to a close."  (Id. at 29.)  Mr. Tyrone

responded:  "I will, Your Honor.  It's a long case, Judge."  (Id.)  After continuing

with his opening for several more minutes, defense counsel was again advised by

2

the trial judge:  "Counsel, I'm going to give you two minutes and don't argue your case.  You can tell the jury what you anticipate the evidence will show.  You have just two minutes, two minutes."  (<u>Id</u>. at 30.)  After this comment was made, Mr. Tyrone began to argue with the trial judge in the presence of the jury.

Mr. Tyrone replied, "I need more than two minutes."  The trial judge responded: "I'm not going to give you more than two minutes, Counsel, go ahead. Sum it ... up in two minutes."  (<u>Id</u>.)  Mr. Tyrone asked to approach the bench.  The trial judge denied the request, instructing him to "[g]o ahead and do as I directed, bring this opening statement to a conclusion."  (<u>Id</u>.)  Mr. Tyrone stated to the trial judge:  "[Y]ou didn't give me a time limit."  (<u>Id</u>.)  The trial judge responded:  "You knew it was 30 minutes."  (<u>Id</u>.)  Mr. Tyrone stated, "No, I don't," and the trial judge replied, "I want you to do it.  Go ahead, I'm giving you two additional minutes, I've given you more.  Go ahead and bring your . . .  opening statement to a conclusion."  (<u>Id</u>.)  Mr. Tyrone responded: "Will you give me ten . . . ."  (<u>Id</u>.) The trial judge interrupted: "No."  (<u>Id</u>. at 31.)  Mr. Tyrone continued:  "-- so I can finish?  (<u>Id</u>.)  Again the trial judge responded:  "No, I will not give you ten minutes, no."  (<u>Id</u>.)  Mr. Tyrone then complained: "I haven't gotten to the kidnapping, sir."

(Id.)  At this remark, the trial judge excused the jury from the courtroom.  (Id. at

31.)[1]

　　　After the jury departed the courtroom, the trial judge stated again to

Mr. Tyrone that he wanted him to finish his closing in two minutes.  (Id. at 31.)

Defense counsel stated that he could not comply with the trial judge's request.

(Id.)  In response to the remark, the trial judge stated:  "Let the record reflect the

Court is going to declare a mistrial" based on defense counsel's failure to

cooperate.  (Id.)  The trial judge declared the Court to be in recess.  (Id.)

　　　The parties and the Court adjourned to the trial judge's chambers to discuss

the matter with counsel for the Government, Mr. Tyrone, and Mr. Margolis, an

attorney who was assisting Mr. Tyrone.[2]  The trial judge explained that he was

---

　　　[1] This Court has listened to this exchange and determined that it is in the
nature of an argument.

　　　[2] On March 16, 2006, Defendant filed his Motion to Supplement the Record
[150].  In the motion, the Defendant contends the transcript of the in-chambers
proceeding is inaccurate because it does not contain certain statements Defendant
claims Mr. Tyrone made during the in-chambers meeting.  Mot. to Supp., Affidavit
of Laurence Margolis ("Aff.")  Defendant claims the chambers meeting transcript
does not contain two specific statements he attributes as having been made by Mr.
Tyrone:  "I do not believe I have been prejudiced in front of this Jury" and "I am
asking that you allow me to continue the trial and comply with your Order."  Aff. at
¶ 10, Mot. to Supp. ¶ 10.  This Court has listened to the court reporter's back-up
tape recording of the chambers meeting.  There is no evidence either of the

declaring a mistrial because counsel was warned that he should bring his opening statements to a conclusion, yet persisted in asking for more time.  (Id.)  The trial judge further stated that because Mr. Tyrone could not follow the court's instructions, the trial judge would declare a mistrial and refer the case to another judge.  (Id. at 31-32.)  Mr. Tyrone apologized to the trial judge and explained that he was not aware of the time limit. (Id. at 32.)  The trial judge stated that he did not like what happened in the courtroom.  (Id. at 33.)  Mr. Tyrone requested that the trial judge reconsider granting a mistrial, arguing that it would be a mistake because all of the defense's witnesses were present.  (Id.)  The trial judge noted  that defense counsel was specifically asked to bring his opening statement to a close, to which Mr. Tyrone responded, restating his belief that a mistrial would be a mistake. (Id. at 33-34.)  After hearing Mr. Tyrone's argument, the trial judge reiterated that a mistrial was appropriate.  (Id. at 34).  The proceeding was reconvened where, in open court, without the jury present, the trial judge stated:

> Let the record reflect that the Court found it necessary to declare a mistrial in this case because counsel for the

---

comments set out above were made.  Having compared the recording to the transcript, this Court has determined the transcript is accurate.  Accordingly, the motion to supplement is denied.

> defendant would not follow the Court's instructions to
> bring his opening statement to a close after being told to
> do so on two or three occasions.  The first occasion was
> in writing, writing submitted to counsel by the Court's
> deputy clerk, and the Court made I think two or three
> repeated requests that counsel bring his closing [sic]
> argument to a close within two minutes.  Counsel refused
> to follow the Court's instruction and an argument
> between the Court and counsel ensued in the presence of
> the court.  For those reasons the Court declared a mistrial
> and I am going to have this case reassigned to another
> judge.

(Id.)

On February 1, 2006, the trial judge issued an Order declaring a mistrial,

recusing himself from the case, and referring the case for reassignment to another

district judge.  (Order of Mistrial [138].)  The Order reiterated Judge Cooper's

reasons for the mistrial:

> Due to defense counsel's willful refusal to follow
> instructions given by the Court during his opening
> statement and due to an argument that thereafter ensued
> between defense counsel and the Court in the presence of
> the jury, the Court found it necessary to declare a mistrial
> in the case. . . .  More specifically, counsel for Defendant
> would not follow the Court's instructions to bring his
> opening statement to a close after being told to do so on
> multiple occasions. . . . Defense counsel willfully refused
> to do so and then began to argue with the Court about the
> additional time he needed to conclude his opening

statement, notwithstanding the jury being present to
witness defense counsel's obstinance.

Id.

On February 27, 2006, the defendant filed its Motion to Bar Retrial and a
Motion for Hearing on the motion, arguing that there was no "manifest necessity"
for the mistrial, and therefore retrial of the defendant would subject him to double
jeopardy.[3]  On March 10, 2006, the Government filed its Response in opposition to
Defendant's motion [149].

## II.  DISCUSSION

"The Double Jeopardy Clause of the Fifth Amendment protects a defendant
in a criminal proceeding against multiple punishments or repeated prosecutions for
the same offense."  United States v. Dinitz, 424 U.S. 600, 606 (1976).  When the
trial judge declares a mistrial without the defendant's consent, the defendant has
been deprived of his right to have his trial completed by a particular tribunal.
United States v. Jorn, 400 U.S. 470, 484 (1971).  The double jeopardy provision of

---

[3]  The record, pleadings and submissions by the parties are sufficient for a
determination on the issue at hand, therefore the Court finds that no hearing is
needed.  See L.R. 7.1E, N.D.Ga. ("Motions will be decided by the court without
oral hearing, unless a hearing is ordered by the court.").

the Constitution protects this interest by requiring that a trial judge declare a mistrial when a defendant objects when there is a "manifest necessity" for the mistrial or "the ends of public justice would otherwise be defeated."  United States v. Perez, 22 U.S. 579, 580 (1824); Arizona v. Washington, 434 U.S. 497, 505 (1977); Abdi v. Georgia, 744 F.2d 1500, 1503 (11th Cir. 1984).  The "ends of public justice" grounds for a mistrial generally implicate cases where there is a fundamental defect in the charges being brought, such as where an indictment is invalid and it would be unjust for the system to litigate charges on a conviction which would not be upheld. Illinois v. Somerville,  410 U.S. 458 (1972); Wade v. Hunter, 336 U.S. 684 (1949). The "ends of justice" grounds for a mistrial do not apply here.  The question before this Court is whether "manifest necessity" supports the mistrial declared.

"Manifest necessity admits of no precise formulation or mechanical application, for the 'high degree' of necessity mandated by the phrase can be found in a variety of circumstances."  Abdi, 744 F.2d at 1503 (citing Washington, 434 U.S. at 506-07).  The trial judge must use "sound discretion" in determining the existence of manifest necessity.  Venson v. Georgia, 74 F.3d 1140, 1145 (11th Cir. 1996).  "'A defendant's valued right to have his trial completed by a particular tribunal must in some circumstances be subordinated to the public's interests in fair

8

trials designed to end in just judgments.'"  <u>Jorn</u>, 400 U.S. at 480 (citing <u>Wade</u>, 336

U.S. at 689.(1949)).

A trial judge's determination that manifest necessity exists to support a

mistrial should be accorded great deference.  <u>Perez</u>, 22 U.S. at 580; <u>Abdi</u>, 744 F.2d

at 1503.  The need for deference is particularly acute when the grounds for the

mistrial relate to jury prejudice.  Where jury prejudice is at issue, it is the trial judge

who is in the best position to evaluate what occurs in the courtroom, to observe the

reaction of the jurors and ultimately to evaluate the risk of juror prejudice.  <u>Abdi</u>, 744

F.2d at 1503; <u>see also</u> <u>Washington</u>, 434 U.S. at 511 (stating that "the overriding

interest in the evenhanded administration of justice requires that we accord the

highest degree of respect to the trial judge's evaluation of the likelihood that the

impartiality of one or more jurors may have been affected . . . .").  "In short, he is

far more 'conversant with the factors relevant to the determination' than any

reviewing court can possibly be."  <u>Washington</u>, 434 U.S. at 514 (citing <u>Wade</u>, 336

U.S. at 687.)

The efficient and fair administration of justice also favors granting trial judges

broad discretion in deciding whether manifest necessity exists.  Trial judges must

not be deterred from using their discretion in light of the demands of trial to better

protect the defendant.  United States v. Gori, 367 U.S.  364, 369-70 (1961).  It is a

firm, unequivocal principle that

> the law has invested Courts of justice with the authority to
> discharge a jury from giving any verdict, whenever, in
> their opinion, taking all the circumstances into
> consideration, there is a manifest necessity for the act, or
> the ends of public justice would otherwise be defeated.
> They are to exercise a sound discretion on the subject;
> and it is impossible to define all the circumstances, which
> would render it proper to interfere.

 Perez, 22 U.S. at 580.  "To be sure, the power ought to be used with the greatest

caution, under urgent circumstances, and for very plain and obvious causes."  Id.

It is when a trial judge, who, in declaring a mistrial, acts "irrationally or

"irresponsibly," Washington, 434 U.S. at 514,  or in an "abrupt, precipitous or

erratic manner," United States v. Bradley, 905 F.2d 1482, 1488 (11th Cir. 1990), that

a Court abuses its discretion.  In these instances, a mistrial is improper, and the Fifth

Amendment protection against double jeopardy bars reprosecution of the defendant.

A Court, before granting a mistrial on its own motion, should consider

available alternatives short of a mistrial to avoid prejudice to a defendant.  However,

manifest necessity for a mistrial may exist even in the presence of less severe

alternatives.  Abdi, 744 F.2d at 1503.  The Eleventh Circuit has explained that while

a trial judge should consider whether alternatives are feasible, the judge does not err if he or she fails to consider or choose a particular alternative.  Venson, 74 F.3d at 1145.[4]

In this case, the Court[5] declared a mistrial after engaging in an argument with defense counsel in front of the jury when the defense counsel refused to conclude his opening statement within the time requested by the judge.  The argument involved a series of curt exchanges.  The argument was the culmination of an escalating series of events beginning when the trial judge, in response to the Government's objection, advised defense counsel to move on to the facts of the alleged crimes.[6]  Defense counsel continued his presentation.  When Mr. Tyrone

---

[4]  The Supreme Court has suggested that a further consideration in determining manifest necessity is which party to the case was the beneficiary of the mistrial ruling.  Jorn, 400 U.S. at 482 (noting that the existence of manifest necessity may be related to the fact that the judge acts "in the sole interest of the defendant"), see also Bradley, 905 F.2d at 1489.

[5]  The trial judge in this case is an experienced and seasoned trial judge.  He has handled difficult, complex and demanding cases over his more than 30 years of service on the state and federal bench.  His reputation is for fairness, a quiet and tolerant judicial demeanor, and for refraining from acting precipitously or irrationally.

[6]  This Court has reviewed the opening statement and finds it to be bogged down in factual details not characteristic of an opening statement and it was delivered more in the manner of a summation.

continued his opening without addressing the operative facts of the crimes alleged, the trial judge next had his courtroom clerk inconspicuously place a note before defense counsel advising him to bring his opening to a close.  Defense counsel continued with his presentation.  The trial judge eventually interrupted defense counsel on two occasions to inform him that he must finish his opening statement. On the second occasion, the trial judge gave defense counsel a two-minute time limit to complete his presentation.  Mr. Tyrone objected to the limitation, arguing he needed more time than he was allowed.  The exchange further escalated, ultimately culminating in defense counsel's refusal to obey the Court's instructions, stating that he could not follow them.  (Tr. at 31.)

The comments made and the manner in which they were communicated appeared to create, in the trial judge's mind, a significant risk that a juror might believe that the defense counsel was not acting professionally or respectfully toward the trial judge.  Although not articulated expressly by the trial judge,[7] it appears he may well have believed that the argument, and specifically the Court's  comments

---

[7] The trial judge is not required to make the manifest necessity determination explicit in the record.  See Washington, at 516-17; Venson, 74 F.3d at 1146.

and admonitions to defense counsel, may have communicated to the jury that the trial judge considered defense counsel inept or incompetent, thereby discounting defense counsel's credibility and effectiveness before the jury.  That is, the argument may well have impacted how a jury would perceive and evaluate Defendant's defense at trial, thus prejudicing the Defendant.  Viewing the transcript of the proceedings as a whole, it appears to this Court that the trial judge, while irritated with defense counsel, was aware that a significant prejudice issue had arisen at the earliest stage of the case and that this potential prejudice was severe enough to warrant a mistrial on his own motion.

The record strongly suggests the trial judge was concerned with what had occurred and that it had occurred very publicly before the jury.  Each time the trial judge stated why the mistrial was declared, he focused on the argument and the fact that it occurred in front of the jury.  In fact, in open court before declaring the mistrial, he stated that counsel had refused the Court's instruction and "an argument between the Court and counsel ensued in the presence of [the jury].  For those reasons the Court declared a mistrial."  (Tr. at 34.)

Given these circumstances, this Court finds that the argument between defense counsel and the trial judge unduly affected the jury's view of defense

counsel and that this effect was prejudicial to the defendant, giving rise to a risk of manifest injustice.  This Court will give deference to the trial judge's decision.  He was, after all, the one who was in the best position to evaluate the impact of the argument and its effect on the jurors, and his decision to grant a mistrial should not be disturbed.

The defendant argues that United States v. Quiala stands for the proposition that "a Court's frustration with counsel is not a legitimate basis for declaring a mistrial over a Defendant's objection."  Mot. To Bar Retrial, at ¶ 9.  The Defendant's reliance on Quiala is misplaced.  In Quiala, the defendant's trial commenced in Key West, Florida on July 16, 1990 and evidence was presented over the course of seven days.  19 F.3d 569, 570 (11th Cir. 1994).  Closing arguments were scheduled for July 24th at 9:30 a.m.  Defense counsel, the court's deputy clerk and the court reporter had all returned to Miami on July 23rd.  They had reservations to return to Key West on July 24th, in sufficient time for closing arguments to be made.  When mechanical problems delayed the flight on the 24th, the court's courtroom deputy phoned the judge's secretary to report the delay.

14

Despite this communication, when defense counsel had not arrived by 10:20 a.m.[8]

on July 24th, the Court declared a mistrial.  In doing so, the Court noted defense

counsel was expected to arrive in court about an hour later.

A second trial on the charges against the Defendant was scheduled for

January 15, 1991.  The Defendant moved to dismiss the charges, claiming double

jeopardy barred the second trial.  The second trial proceeded, and the defendant

was convicted.  He appealed.

The Eleventh Circuit in <u>Quiala</u> found that defendant's counsel's delayed

arrival was not sufficient for the trial judge to find that manifest necessity existed for

a mistrial.  (<u>Id.</u> at 572).  The Court specifically noted that the defense counsel had

not purposefully caused her "unavoidable"  delay in arriving for the arguments.  (<u>Id.</u>

at 571).  That is, the defense counsel had not played a role in creating the grounds

cited by the Court for declaring a mistrial.  The Court noted further that the mistrial

was declared after seven trial days had been completed.  (<u>Id.</u> at 572).  The Circuit

Court then noted the trial court had somehow concluded that defense counsel's

---

[8] The Court's deputy courtroom clerk and court reporter also had not
arrived.

failure to appear was a deliberate strategic move to compensate for the Court's failure to sever the trial earlier.[9]  Id.  The Eleventh Circuit found the trial court's abrupt declaration of a mistrial based on "[d]efense counsel's late arrival to present closing argument, causing a two-hour delay at the conclusion of a 7-day trial, [did] not constitute a manifest necessary to justify granting a mistrial."  Id.

Quiala is far different from what occurred here.  In this case, in the first hour of the trial, a federal district judge engaged in an argument with counsel for the defendant in front of the jury.  That argument, before any evidence was presented, cast a cloud over the defense because it suggested to the jury that the judge had disdain or disrespect for, or questioned the professionalism or competence of, the defendant's lawyer.  This presented a risk that the judge's comments during the argument would color the jury's view of the defendant and his counsel.  The prospect for prejudice to the Defendant was real -- the court repeatedly recognized his concern that all of this had occurred in front of the jury.  The present case is further distinguished from Quiala because it involved the active and provoking role

---

[9] There was scant basis to support this conclusion reached by the trial court.

of the defense counsel, who despite repeated instruction from the Court, said he could not and would not abide by the instruction to conclude his opening.

This case is similar to the events in Washington, where the trial court declared a mistrial after the defense counsel made improper and prejudicial remarks during his opening statement.  In upholding the trial judge's determination, the Supreme Court stated, "We recognize that the extent of the possible bias cannot be measured, and that the District Court was quite correct in believing that some trial judges might have proceeded with the trial after giving the jury appropriate cautionary instructions. In a strict, literal sense, the mistrial was not 'necessary.'  Nevertheless, the overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood [of] impartiality. . . ."  Washington, 434 U.S. at 511.  While the defendant emphasizes in its Reply that Mr. Tyrone's actions were taken in good faith, the important consideration is what effect his behavior and exchange with the Court had upon the jury.  (See Defendant's Reply to Government's Response to Defendant's Motion to Bar Further Prosecution [157] ("Defendant's Reply"),  at 4.)

While the Court did not specifically enumerate alternatives to a mistrial, it can be inferred from the record that the Court had sufficient opportunity to consider

17

them.  After it became clear that defense counsel would not follow instructions, the Court excused the jury from the courtroom.  (Tr. at 31.)  After an unsuccessful attempt to convince defense counsel to comply with its instructions, the Court called a recess.  (Id.)  In chambers, the Court explained its intention to declare a mistrial and the reasons for doing so.  (Id.)  The Court granted Mr. Tyrone's request to be heard, allowing him to argue against a mistrial, and the Government also stated its opinion that Mr. Tyrone should be familiar with practice in federal court.  (Id. at 33.)  The Court allowed defense counsel to state his position that a mistrial would be a mistake.  After considering all of this in two different settings, the Court decided that a mistrial was the best way to remedy any possible prejudice against the defendant.  The manner in which the Court proceeded here evidences that he did not act in an "abrupt, precipitous or erratic manner," but took time and care in making the decision.[10]

---

[10]  It is also worth noting a lack of viable alternatives existed for the trial judge to remedy the significant potential for prejudice which was created.  Unlike a case where an attorney asks an improper question of a witness, or a witness gives improper or prejudicial evidence, see Venson, 74 F.3d 1140, United States v. Chica, 14 F.3d 1527 (11th Cir. 1994),  an instruction to the jury to ignore the defense counsel's obstinacy hardly seems effective in eliminating prejudice against the defense.  See Washington, 434 U.S. at 512-13 ("An improper opening statement unquestionably tends to frustrate the public interest in having a just

Finally, the trial judge's actions appear to be motivated solely to protect the defendant.  The mistrial was declared very early in the proceedings, when neither side appeared to have any advantage.  Thus, the trial judge could not have been attempting to aid the prosecution by giving it a second chance to convict or build a better case against the defendant.  See Washington, 434 U.S. at 508 ("[The Double Jeopardy Clause] bars retrials where 'bad-faith conduct by judge or prosecutor' . . . [results in a] declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict the defendant.").  The trial judge's motivation was to protect the defendant by ensuring that he had effective counsel against whom the jury was not prejudiced.  He even went a step further to protect the defendant's interests, recusing himself from further proceedings so that defense counsel could have a fresh start with a new judge. [11]

---

judgment reached by an impartial tribunal.  Indeed, such statements create a risk, often not present in the individual juror bias situation, that the entire panel may be tainted. . . .  [Other curative actions] will not necessarily remove the risk of bias that may be created by improper argument.").  Indeed, a curative admonition or instruction may well have made matters worse.

[11] A mistrial in this case allows defense counsel to determine the confines of the trial, including time limits for his opening and closing statements, and to seek more time for his opening if necessary.  In all, the reassignment is a further benefit to the defendant.

19

In light of the very broad discretion accorded trial judges in determining whether to grant a mistrial and under the unique circumstances present here, this Court concludes that the trial judge exercised sound discretion in his determination that manifest necessity existed for a mistrial.  This Court believes the granting of a mistrial promoted justice and fairness and avoided prejudice to the defendant, all of which engender public trust and confidence in the federal criminal justice system and otherwise provide a basis for the Defendant to receive a fair trial of the charges against him.  The trial judge simply was in the superior position, and thus the best position, to evaluate the likely effect of the argument upon the jury.

## III.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion to Bar Retrial of Defendant [147] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Hearing [151], and Defendant's Motion to Supplement the Record [150], is **DENIED**.

20

**IT IS FURTHER ORDERED** that a pretrial conference in this matter is scheduled for May 22, 2006, at 10:00 a.m. at the United States Courthouse, 75 Spring Street, S.W., Room 1721, Atlanta, Georgia, 30303.

**SO ORDERED**, this 25th day of April, 2006.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE